**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MARC C.,

                      Plaintiff,             No. 1:17-CV-1096
                                         (CFH)

      v.

COMM'R OF SOC. SEC.,

                      Defendant.

_____

**APPEARANCES:**                        **OF COUNSEL:**

Marc C.
Plaintiff pro se

Social Security Administration        LAUREN E. MYERS, ESQ.
Office of Regional General Counsel,     Special Assistant U.S. Attorney
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Marc C.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on

the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 12

and 13.) For the reasons set forth below, Plaintiff's motion for judgment on the

pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and

Plaintiff's Complaint is dismissed.[1]

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1978, making him 35 years old at his amended alleged onset date and 38 years old at his date last insured. Plaintiff reported completing the twelfth grade. Plaintiff has past work as a package delivery driver (classified as a truck driver by the vocational expert at the administrative hearing). At the initial level, Plaintiff alleged disability due to disc degeneration, Parkinson's disease ("Parkinsonism"), tremors, carpal tunnel syndrome, obstructive sleep apnea, morbid obesity, sleep disorder, and muscle spasms.

## B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on May 18, 2015, and initially alleged an onset of disability dated October 6, 2010. Plaintiff subsequently amended his alleged onset date to February 1, 2013. Plaintiff's application was initially denied on July 24, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 4.

before ALJ Robert Gonzalez on April 6, 2017.  (T. 21-53.)[2]  On May 2, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 7-20.)  On August 2, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 12-17.)  First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016.  (T. 12.) Second, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of February 1, 2013, through his date last insured of December 31, 2016.  (Id.)  Third, the ALJ found that, through the date last insured, Plaintiff had severe impairments including degenerative disc disease ("DDD") with disc herniation of the cervical spine, cervicalgia, Parkinson's disease, carpal tunnel syndrome, obstructive sleep apnea, and obesity.  (Id.)  Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 12-13.)  Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 11.06 (Parkinsonian syndrome).  (Id.)  Fifth, the ALJ found that Plaintiff had the residual functional capacity

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

("RFC") to perform sedentary work except he could frequently handle, finger and reach in all directions bilaterally; could frequently flex, extend and rotate the neck; was unable to work at unprotected heights or work on ladders, ropes or scaffolds; and could occasionally stoop, crouch and drive. (T. 13.) Sixth, the ALJ found that Plaintiff was unable to perform any past relevant work. (T. 15-16.) Seventh, and last, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. (T. 16-17.) The ALJ therefore concluded that Plaintiff was not disabled at any time from his alleged onset date through his date last insured.

### D. The Parties' Briefings on Their Cross-Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Plaintiff, appearing pro se in this case, filed his Memorandum of Law on February 16, 2018. (Dkt. No. 12 [Pl.'s Mem. of Law].) Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings. (Id. at 1-7.) First, Plaintiff argues that the ALJ did not fully develop the record. (Id. at 1, 3.) Specifically, Plaintiff argues that the decision mentions his physical therapy treatment, but the record contains no related opinions, notes indicating response to treatment, or range of motion measurements. (Id.) Plaintiff also argues that the ALJ erred by failing to contact his treating sources to request additional evidence and/or clarification regarding his impairments or RFC. (Id.)

Second, Plaintiff argues that the ALJ did not adequately evaluate Plaintiff's credibility. (Dkt. No. 12 [Pl.'s Mem. of Law] at 1, 3-4.) Specifically, Plaintiff argues that

he has multiple medically determinable impairments in the record that can reasonably be expected to cause his alleged symptoms and that there is objective medical evidence supporting his statements concerning the intensity, persistence, and limiting effects his impairments have on his activities of daily living. (Id.) Plaintiff also argues that there are no specific reasons given as to why the ALJ concluded he was less than credible and that the ALJ's conclusion that Plaintiff's activities of daily living are inconsistent with his complaints of pain is very vague and does not fully explain how the ALJ formulated his decision. (Id. at 1-2, 4.)

Third, Plaintiff argues that the ALJ did not properly evaluate and consider the type, dosage, and effectiveness of medications concerning both precipitating and aggravating factors regarding Plaintiff's impairments. (Dkt. No. 12 [Pl.'s Mem. of Law] at 2, 4-5.) Specifically, Plaintiff argues that he takes multiple medications to treat his conditions and these medications have many side effects which affect his activities of daily living. (Id.)

Fourth, Plaintiff argues that the ALJ erred when assessing an RFC for sedentary work because it does not take into consideration Plaintiff's complaints of pain and limitations, which although subjective, are supported by objective medical evidence. (Dkt. No. 12 [Pl.'s Mem. of Law] at 2, 5.) Specifically, Plaintiff argues that it is not reasonable to conclude he can frequently handle, finger, and reach in all directions bilaterally because the record contains evidence of upper extremity radicular symptoms with increasing hand numbness and reduced grasp strength. (Id. at 5.)

Plaintiff further argues that a February 2017 MRI of the cervical spine (indicating

5

a disc herniation impinging on the left root sleeve at C2-C3, a disc herniation at C4-C5 causing minimal impingement, and a disc herniation at C7-T1 impinging on the left root sleeve) shows evidence of pain and it is reasonable to conclude that he does not have the capability to frequently flex, extend, and rotate the neck as found in the RFC. (Dkt. No. 12 [Pl.'s Mem. of Law] at 5.) Plaintiff also points to a December 2014 MRI to indicate there is objective medical evidence that he is experiencing pain and that this MRI stated Plaintiff has moderately severe left-sided neuroforaminal stenosis. (Id.) Plaintiff argues that these MRIs were not discussed by the ALJ in how he arrived at his decision, but rather that the ALJ only stated the record showed a history of mild cervical DDD, carpal tunnel and sleep apnea. (Id. at 5-6.) Plaintiff reiterates that the ALJ erred in failing to contact Plaintiff's treating sources to establish his RFC and additional limitations related to his cervical impairments would significantly erode the jobs he would be capable of doing. (Id. at 6.) Plaintiff contends that the ALJ appeared to be selective in the evidence from the record that he mentioned in his decision to point towards an unfavorable decision. (Id.)

Fifth, Plaintiff argues that the ALJ overlooked the evidence of record which Plaintiff asserts clearly shows he meets Listing 1.04A. (Dkt. No. 12 [Pl.'s Mem. of Law] at 2, 6-7.) Specifically, Plaintiff points to the MRIs from December 2014 and February 2017 showing evidence of nerve root compression as well as his history of cervical radiculopathy, a limited range of motion in his neck, a loss of grip strength on the right, and a diminished sensory exam. (Id. at 6.) Plaintiff also argues that his obesity should be considered in meeting the requirements of Listing 1.04. (Id. at 6-7.)

## 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes three arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 13, at 6-14 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ performed a proper analysis of the Listings of Impairments at Step Three.  (Id. at 7-9.)  Specifically, Defendant argues that, as the ALJ discussed, Plaintiff's disorder of the spine did not meet the requirements of Listing 1.04, including nerve root compression with sensory or reflex loss.  (Id. at 8.)  Defendant acknowledges that Plaintiff does have a disorder of the cervical spine resulting in compromise of the nerve root but argues that there is no evidence in the record of motor loss including atrophy with associated muscle weakness as required by the listing.  (Id. at 8-9.)  Defendant also points out that Plaintiff only notes limited motion in the cervical spine from after the date last insured of December 31, 2016, and that, during the relevant period, Plaintiff was only noted as having mild limitation of posterior range of motion of the neck.  (Id. at 9.)

Second, Defendant argues that the record was properly developed.  (Dkt. No. 13, at 6-14 [Def.'s Mem. of Law] at 9-10.)  Specifically, Defendant argues that Plaintiff was represented by an attorney at the hearing level, the attorney did not indicate that there were any outstanding medical records, and Plaintiff testified that he did not have any other treatment aside from eRiver Neurology.  (Id.)  Defendant also argues that the ALJ noted to Plaintiff he would try to help get further records if they existed and Plaintiff did not indicate that other records existed.  (Id.)  Defendant additionally argues Plaintiff's attorney did not request that the record remain open to pursue any further

records or that the ALJ assist in obtaining records.  (Id.)  Finally, Defendant argues that the treatment records from eRiver Neurology along with the notes and opinion from the consultative examiner allowed the ALJ enough information to make a decision with regard to disability and that there was no need for a medical source statement from a treating provider.  (Id. at 10.)

Third, Defendant argues that the ALJ properly considered Plaintiff's RFC and credibility.  (Dkt. No. 13, at 6-14 [Def.'s Mem. of Law] at 10-14.)  Specifically, Defendant argues that the ALJ properly reviewed all of the pertinent medical evidence of record and provided a sound rationale for the RFC finding, which is supported by the medical evidence as a whole.  (Id. at 11.)  Defendant also argues that, during the relevant period, Plaintiff had intact hand and finger dexterity and full grip strength at the consultative examination and that, although the ALJ did not discuss MRI evidence specifically, it is clear that he considered Plaintiff's cervical DDD.  (Id. at 12.) Defendant notes that the ALJ afforded slight weight to the consultative opinion of Peter Graham, M.D., which indicated Plaintiff had no exertional limitations.  (Id.)  Defendant argues that it was appropriate for the ALJ to consider the supportability of an opinion and the consistency of an opinion with the record as a whole and that the ALJ did so here when affording slight weight to Dr. Graham's opinion due to Plaintiff's treatment history and the hand tremors on examination.  (Id.)  Finally, Defendant argues that the ALJ set forth valid reasons supported by substantial evidence for his credibility finding. (Id. at 12-14.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  <u>See</u> 42 U.S.C. § 405(g); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  <u>See</u> <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>accord</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983), <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

> gainful activity.  Assuming the claimant does not have a
> listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is
> unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant
> could perform.  Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four
> steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thompson, 540 U.S. 20, 24 (2003).


### III. ANALYSIS

### A. Listing 1.04A

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing."  Rockwood, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  Rockwood, 614 F. Supp. 2d at 272 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where

the decision lacks an express rationale for that finding if the determination is supported by substantial evidence.  See Rockwood, 614 F. Supp. 2d at 273 (citing Berry, 675 F.2d at 468).

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment and noted that Listing 1.02, Listing 1.04, and Listing 11.06 were considered.  (T. 12-13.) Plaintiff argues that the ALJ overlooked the evidence of record which Plaintiff asserts clearly shows he meets Listing 1.04A and that his obesity should be considered in meeting the requirements of Listing 1.04.  (Dkt. No. 12, at 6-7 [Pl.'s Mem. of Law]; citing T. 221-22, 271-72, 274.)  The Court finds these arguments unpersuasive.

First, the ALJ's overall decision indicates he adequately considered the evidence of record, including the evidence cited by Plaintiff in support of his argument that he meets Listing 1.04A.  (T. 12-15, 221-22, 271-72, 274.)  As indicated by Defendant, the records cited by Plaintiff do indicate a disc herniation impinging on the left root sleeve at C2-C3, but they do not support the existence of sensory or reflex loss as required by Listing 1.04A because there is no evidence in the record of motor loss including atrophy with associated muscle weakness.  (Dkt. No. 13, at 7-9 [Def.'s Mem. of Law]; T. 274.)

Second, the ALJ explicitly stated that Plaintiff's disorder of the spine did not meet the severity requirements of Listing 1.04, "including but not limited to evidence of nerve root compression with sensory or reflex loss; spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication." (T. 13.)  Further, the ALJ specifically noted Plaintiff's obesity in conjunction with Social Security Rulings ("SSRs") 00-3p and 02-01p and

12

indicated that, even with this consideration, the evidence failed to establish Plaintiff's impairments or combination of impairments met or medically equaled the requirements of any listed impairment. (Id.) While brief, the ALJ's analysis of Plaintiff's impairments at Step Three indicate sufficient consideration of these impairments in relation to Listing 1.04A.

For the reasons above, the ALJ's findings regarding Plaintiff's impairments at Step Three are supported by substantial evidence. As such, remand is not required.

### B. RFC and Credibility Determinations and Whether the ALJ Properly Developed the Record

#### i. Applicable Law

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012), Report

and Recommendation adopted by 2013 WL 1180864, N.D.N.Y., Mar. 20, 2013 (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.");  Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'"  Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20

14

C.F.R. §§ 404.1527(c)(1)-(6).

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"  Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  Weather v. Astrue, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)).

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial

nature of a hearing on disability benefits. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Melville, 198 F.3d 52; citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002), Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." Hart v. Comm'r of Soc. Sec., No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal quotation marks omitted).

"Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Further, there is no obligation to re-contact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination." Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (summary order) (citing Perez, 77 F.3d at 47-48; see also 20 C.F.R. § 404.1520b (indicating that the Commissioner may re-contact a treating physician "[i]f the evidence is consistent, but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled[.]").

16

### ii. The Court's Analysis

Here, the ALJ found that Plaintiff has the RFC to perform a modified range of sedentary work. (T. 13.) In so doing, the ALJ summarized the medical evidence of record including the consultative physical examination by Dr. Graham as well as Plaintiff's treatment history, subjective complaints, and testimony. (T. 14-15.) The ALJ afforded slight weight to Dr. Graham's opinion (which indicated that Plaintiff had no exertional limitations) because this opinion was not consistent with Plaintiff's treatment history and did not take into account his hand tremors noted on examination. (T. 15, 250.) The ALJ noted that the record did not contain any opinions from treating or examining physicians indicating Plaintiff was currently disabled. (T. 15.) The ALJ further noted that Plaintiff's work history showed that he worked prior to the onset date and left due to his condition, and that the medical evidence supported that Plaintiff could not engage in his past work, but could engage in less demanding sedentary exertional work. (Id.)

On assessing Plaintiff's credibility, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 14.) The ALJ indicated that Plaintiff had described daily activities which were not limited to the extent one would expect, including telling the consultative examiner that he was able to care for his needs and do some limited cooking and shopping as well as testifying that he did some limited driving. (T. 14-15.) The ALJ noted that Plaintiff's treatment for his allegedly disabling impairments included medication management and

an attempt at physical therapy, but that Plaintiff had never been hospitalized for his conditions nor received any emergency room care and he had not undergone any surgery or significant pain management treatment. (T. 15.) The ALJ also noted that treatment notes reflected decreased symptoms of Parkinson's disease with medication management and there was no indication by treatment reports that he suffered from any significant side effects to his medication. (Id.)

Plaintiff argues that the ALJ erred when assessing the RFC because the ALJ did not discuss MRIs in his decision, the RFC does not take into consideration Plaintiff's complaints of pain and limitations, and it is not reasonable to conclude that he can frequently handle, finger and reach in all directions bilaterally or frequently flex, extend and rotate the neck. (Dkt. No. 12, at 2, 5-6 [Pl.'s Mem. of Law].) Plaintiff also argues that the ALJ erred in failing to contact Plaintiff's treating sources to establish his RFC or to request additional evidence and/or clarification regarding his impairments/RFC and that the record contains no opinions, notes, or range of motion measurements related to his physical therapy treatment. (Id. at 3, 6.) Additionally, Plaintiff argues that the ALJ did not adequately evaluate Plaintiff's credibility, there are no specific reasons given as to why the ALJ concluded Plaintiff was less than credible, the ALJ's conclusion that Plaintiff's activities of daily living are inconsistent with his complaints of pain is very vague and does not fully explain how the ALJ formulated his decision, and the ALJ did not properly evaluate and consider the type, dosage and effectiveness of medications concerning both precipitating and aggravating factors regarding Plaintiff's impairments. (Id. at 1-5.) The Court finds these arguments unpersuasive.

First, the ALJ's overall decision indicates that he appropriately considered the various evidence of record in making his RFC and credibility determinations. (T. 13-15.) The ALJ explicitly stated that he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and SSR 96-4p. (T. 13.) The ALJ also indicated he had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Id.)

Regarding the credibility determination, the ALJ further stated that, in evaluating Plaintiff's symptoms, including pain, under factors described in 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p, there were several reasons why Plaintiff's allegations of the nature, intensity, persistence and limiting effects of those symptoms were not consistent with the medical signs, laboratory findings and/or other evidence of record which limited the capacity for work-related activities. (T. 14.) The ALJ went on to list and explain those reasons, which included Plaintiff's description of his daily activities, his treatment history, and inconsistency between Plaintiff's symptoms/related limitations and the evidence of record. (T. 14-15.) The ALJ explicitly addressed the type, dosage, effectiveness, and side effects of any medications Plaintiff was taking or had taken to alleviate pain or other symptoms and concluded that it would not prevent him from engaging in the determined RFC. (T. 15.) Further, the ALJ also noted that the record did not contain any opinions from treating or examining physicians indicating Plaintiff was currently disabled and that Plaintiff's work history showed he worked prior to the

19

onset date and left due to his condition.  (Id.)  The ALJ indicated that the medical evidence supported that Plaintiff could not engage in his past work but could engage in less demanding sedentary exertional work.  (Id.)  The ALJ ultimately concluded that the RFC was supported by treatment notes which showed improvement in symptoms with medication management, the clinical examination findings, the conservative nature of care prescribed, and the activities of daily living that Plaintiff could still perform.  (Id.) The Court finds that the reasons given by the ALJ constitute sufficient, specific reasons for his credibility determination.

Second, the Court finds that the ALJ properly developed the record and did not fail in his affirmative duty to develop the record.  As indicated by Defendant, the Court notes that Plaintiff was represented by attorney Mitchell Spinac at the hearing level. (Dkt. No. 13, at 9-10 [Def.'s Mem. of Law]; T. 10, 21, 23.)  Further, the ALJ discussed the evidence with Mr. Spinac at the hearing and confirmed that the record was up to date with all of the medical records.  (T. 24-26, 30-31, 52.)

Third, although somewhat brief in his discussion, the ALJ did adequately discuss the evidence of record in making his findings.  (T. 14-15.)  Further, although Plaintiff argues that the MRIs were not discussed in the decision, the ALJ was not required to discuss "in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'" Coleman v. Comm'r of Soc. Sec., No. 14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (quoting LaRock ex. rel. M.K. v. Astrue, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)).  The ALJ's decision indicates that he

reviewed the records submitted from eRiver Neurology dated 2014 to 2017 at Exhibits B1F, B3F, and B4F, which includes the MRIs of Plaintiff's cervical spine from December 2014 and February 2017.  (T. 221-22, 274.)  The Court will not now reweigh that evidence which was before the ALJ.  See Warren v. Comm'r of Soc. Sec., No. 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . .  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), Report and Recommendation adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting Lefford v. McCall, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll, 705 F.2d at 642); Lewis v. Colvin, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence) (quoting Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); citing Lamay, 562 F.3d at 507).

For the reasons above, the Court finds that the RFC and credibility determinations are supported by substantial evidence and that the ALJ fulfilled his duty to develop the record.  Remand is therefore not required on these bases.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: December 27, 2018
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge